**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOARD OF TRUSTEES OF THE TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC.-PENSION FUND, | Civil Action No. 15-0889 (ES) (JAD) |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| 160 EAST 22ND STREET REALTY, LLC, et al. | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

1.  **Introduction**. This matter comes before the Court upon the Business Entity Defendants' (the "BEDs")[1] motion to dismiss Count One (alter-ego liability), Count Two (single-employer liability), and Count Five (avoid-and-evade liability) of Plaintiff Board of Trustees of the Trucking Employees of North Jersey Welfare Fund, Inc.-Pension Fund's (the "Pension Fund") Amended Complaint. (D.E. No. 67). For the foregoing reasons, the BEDs' motion to dismiss is DENIED as to Counts One and Two and GRANTED as to Count Five.

2.  Pension filed its Amended Complaint after the Court issued its September 2, 2016 Opinion (D.E. No. 57 (the "Sept. 2, 2016 Opinion")) resolving the BED's prior motion to dismiss (and in the alternative as to Count Four, motion for summary judgment). For purposes of the

---

[1] "Business Entity Defendants" is the moniker used by the parties to denote a group of thirty-nine out of the forty-one named defendants in this action, i.e., all defendants except for Defendant Vincenzo Alessi and Defendant Duramix Concrete Corp. (*See* D.E. No. 62 ("Am. Compl.") ¶ 2).

present motion, the Court writes primarily for the parties and adopts the facts as set forth in the Sept. 2, 2016 Opinion to the extent they are consistent with Pension Fund's Amended Complaint.

3. By way of brief background, Pension Fund is a multi-employer employee benefit plan under ERISA, 29 U.S.C. § 1000, *et seq.* (Am. Compl. ¶ 9).[2] Defendant Duramix, as a signatory to collective bargaining agreements with two non-parties to this litigation, Teamsters Union No. 560 and Personnel Coordinators, Inc. ("PCI"), "was obligated to participate in and contribute to the Pension Fund for all hours of bargaining unit work performed by bargaining unit employees." (*Id.* ¶ 15). On February 19, 2010, "Duramix permanently ceased operations and ceased to have an obligation to remit pension benefit contributions to the Pension Fund." (*Id.* ¶ 16). As a consequence of Duramix's "complete withdrawal" from the Pension Fund, Duramix "incurred withdrawal liability to the Fund pursuant to ERISA, 29 U.S.C. § 1381." (*Id.* ¶¶ 17-18).

4. In early 2010, Duramix and PCI submitted demands for arbitration. (*Id.* ¶ 20). At the conclusion of that arbitration, the arbitrator found that Duramix and PCI "were jointly and individually liable for the withdrawal liability, based on a 2010 plan withdrawal amounting to $1,924,798.00." (*Id.* ¶ 21). Following the arbitration, PCI filed a Complaint in the United States District Court for the District of New Jersey seeking to vacate the arbitration award. (*Id.* ¶ 22). After "Pension Fund cross-moved and sought to have the award confirmed and Summary Judgment granted as to Duramix, Judgment was eventually issued against Duramix on August 24, 2012 in the amount of $1,316,901.60." (*Id.*).

5. Pension Fund brought this action to recover the withdrawal liability Duramix incurred when it withdrew from the Pension Fund in February 2010. (*Id.* ¶ 1). Relevant here, Pension Fund seeks to hold the BEDs liable—through various theories of liability—for Duramix's

---

[2] In its Amended Complaint, Pension Fund uses all capital letters to refer to certain Defendants. The Court does not do so in this Opinion.

withdrawal liability. (*See id.* ¶ 3). Three of those theories are the subject of the BEDs' motion to dismiss. The Court will address each in turn.[3]

6.  **Legal Standard**. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must set forth a "short and plain statement of the claim showing that a pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that although the pleading standard does not require detailed factual allegations, it does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation").[4] In addition, a plaintiff's short and plain statement must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[3]  The Court has subject-matter jurisdiction over this action for the reasons stated in the Sept. 2, 2016 Opinion. (*See* Sept. 2, 2016 Opinion at 7-9).

[4]  Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

3

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

7. **Count One: Alter-Ego Liability**. Count One of the Amended Complaint seeks to hold the BEDs liable under the alter-ego doctrine. (*See* Am. Compl. ¶¶ 54-82). The alter-ego doctrine "is a tool of equity, whose purpose 'is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law.'" *Govt. Dev. Bank for Puerto Rico v. Holt Marine Terminal, Inc.*, No. 02-7825, 2011 WL 1135944, at *30 (E.D. Pa. Mar. 24, 2011) (quoting *Bd. of Trs. Of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002)). Pension Fund's original Complaint asserted a claim for alter-ego liability, but did so in the same count as Pension Fund's claim for single-employer liability. (*See* D.E. No. 1 ¶¶ 61-88 ("Second Count – Single Employer/Alter Ego Liability")). In the Sept. 2, 2016 Opinion, the Court found that, "[t]o the extent [Pension Fund] seeks to hold [the] BEDs liable under both a single-employer theory and an alter-ego theory, those theories must be pleaded in separate counts." (Sept. 2, 2016 Opinion at 14). Irrespective of this procedural defect, however, the Court found that Pension Fund's original Complaint included sufficient facts to state a claim under an alter-ego theory of liability. (*Id.* at 14-15) ("Accordingly, Count 2 of the Complaint, *while stating a claim for alter-ego liability*, must be re-pleaded to the

4

extent that [Pension Fund] seeks to assert a single-employer theory of liability.").[5] Since Pension Fund has re-pleaded its alter-ego claim as a separate and distinct count in its Amended Complaint, the Court will deny the BEDs' motion as to Count One.

8.      **Count Two: Single-Employer Liability**.  The single-employer doctrine "allows two nominally independent enterprises to be treated as one integrated enterprise for purposes of liability." *Operative Plasterers & Cement Masons Int'l Ass'n Local 8 v. AGJ Const., LLC*, No. 08-6163, 2009 WL 2243900, at *4 (D.N.J. July 24, 2009) (citing *N.L.R.B. v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1122 (3d Cir. 1982)).  Courts consider four factors to determine whether distinct entities are in fact a single employer: "(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership." *Browning-Ferris Indus. of Pa.*, 691 F.2d at 1122.  While no factor is controlling, "the National Labor Relations Board has stressed the first three factors, particularly centralized control of labor relations." *Operative Plasterers*, 2009 WL 2243900, at *4.  "Ultimately, a single employer status depends upon all the circumstances of the case and is characterized by absence of an arm's length relationship found among unintegrated companies." *Id.*

9.      As a threshold issue, the parties dispute whether a claim for single-employer liability in the ERISA context is a viable cause of action in the Third Circuit. (*See* D.E. No. 67-1 ("Def. Mov. Br.") at 9-11; D.E. No. 70 ("Pl. Opp. Br.") at 9-14).  The BEDs argue that this cause of action fails because "it has not been adopted by the Third Circuit in the context of withdrawal liability under ERISA and the [Multiemployer Pension Plan Amendments Act ("MPPAA")]."

---

[5]      (*See also id.* at 15) ("Although only four of the defendant companies are specifically named in the Complaint, the specific allegations as to Duramix, AOM, Bayonne Durable, and Durable Recycling, along with the numerous allegations as to the ownership of Duramix and BEDs, informal lending between Duramix and BEDs, and offices and equipment shared by Duramix and BEDs . . . permit the Court to draw the reasonable inference that BEDs could be liable as alter egos for Duramix's withdrawal liability.").

(Def. Mov. Br. at 9). The BEDS note that the Third Circuit declined to extend the single-employer test to a Title VII employment-discrimination action on the grounds that Title VII and the NLRA are animated by different policies. (*Id.* at 10) (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85 (3d Cir. 2003)). And the BEDs point to *Great-West Life & Annuity Ins. Co. v. Knudson*, in which the Supreme Court observed, in dictum, that it has been "especially reluctant to tamper with [the] enforcement scheme embodied in the [ERISA] statute by extending remedies not authorized by its text." (*Id.* at 11) (quoting 534 U.S. 204, 209 (2002)).

10. Pension Fund counters that "the Third Circuit has not prohibited single employer liability under the MPPAA," and cites two cases in this District that seem to support the viability of the single-employer doctrine in the context of withdrawal liability. (Pl. Opp. Br. at 9) (citing *Operative Plasterers*, 2009 WL 2243900 and *IBEW Local 102 Welfare, Pension, Annuity & Joint Apprenticeship Training Funds & Their Boards of Trs. v. BCG Solar, LLC*, No. 13-4473, 2015 WL 5996320 (D.N.J. Oct. 13, 2015)). The BEDs do not address either case.

11. In *Operative Plasterers*, plaintiffs brought suit under ERISA and the Labor Management Relations Act of 1947 ("LMRA") to recover on a judgment entered against one of the defendant companies for failing to make required contributions under a collective bargaining agreement. 2009 WL 2243900, at *1. Like here, plaintiffs sought to establish the liability of related business entities under various theories of liability, including the single-employer and alter-ego doctrines. *Id.* Judge Bumb analyzed plaintiffs' claim for single-employer liability and denied the defendants' motion to dismiss as to that theory of recovery, finding that plaintiffs pleaded "facts sufficient to sustain claims premised upon the 'single employer' doctrine." *Id.* at *5.

12. Similarly, in *BCG Solar*, plaintiffs brought suit under ERISA and the LMRA to recover delinquent contributions from a solar company ("BCG") on the grounds that the solar

company was required to make various contributions under a collective bargaining agreement. 2015 WL 5996320, at *1, 4. Plaintiffs also sued BAM Construction Group, LLC ("BAM Group")—of which BCG was a member—on the grounds that BAM Group was liable for BCG's delinquent contributions under the single-employer doctrine. On plaintiffs' motion for default judgment, Judge McNulty found that plaintiffs failed to allege sufficient facts to state a claim for single-employer liability against BAM Group, but his analysis nevertheless suggests that plaintiffs' claim was cognizable:

> The uncontested allegations here are that [BAM Group] consists of a group of businesses of which BCG is a member, that all of the allegedly common businesses have the same business address, and that one individual is a principal of both companies. These allegations, taken as true and construed in plaintiffs' favor, nevertheless do not set forth a basis to treat [BAM Group] and BCG as a single employer. True, sharing the same business address or the same individual as principal might be indicia of common management. Nevertheless, I cannot find that those facts alone dictate single employer status. Thus I find that [BAM Group], unlike BCG, has a meritorious defense.

*See id.* at *4. In light of these cases—and in the absence of further guidance from the Third Circuit or the Supreme Court—the Court declines to find at this time that Pension Fund's claim for single-employer liability is not cognizable as a matter of law.

13. Next, the Court finds that Pension Fund's Amended Complaint adequately states a claim for single-employer liability. As to the first factor—functional integration of operations—Pension Fund alleges that Duramix and the BEDs "exercised communal use of office equipment, office space, heavy machinery in addition to various personnel that performed numerous functions for and on behalf of Duramix, AOM and [the BEDs]." (Am. Compl. ¶ 104). Pension Fund alleges that "[n]o lease agreements or otherwise service agreements existed for [the BEDs'] communal use of this shared office space, staff, vehicles and/or equipment accessed and used among and between the [BEDs]." (*Id.* ¶ 70). Pension Fund further alleges that "Duramix and the [BEDs]

7

effectively operated out of a single location at 160 East 22nd Street, Bayonne, New Jersey, and at which location all relevant accounting, billing, banking, human resource, and labor relation functions were conducted for Duramix and the [BEDs]." (*Id*. ¶ 102). In addition, Pension Fund alleges that Defendant Vincenzo Alessi was the "sole individual authorized to make the myriad of operational decisions on behalf of [the BEDs]." (*Id*. ¶ 94). These allegations—accepted as true and considered within the entire context of Pension Fund's Amended Complaint—tip the "functional integration of operations" factor in Pension Fund's favor. *See Operative Plasterers*, 2009 WL 2243900, at *4 ("Here, Plaintiffs adequately allege integration of operations [because their] description of the Defendant LLCs is on par with *NLRB v. Al Bryant*,[6] in which the Third Circuit found substantial integration of two companies based upon shared equipment, funds, personnel, and an office building, mostly without documentation.").

14. As to the "centralized control of labor relations" factor, Pension Fund alleges that Defendant Vincenzo Alessi, "[a]s principal of Duramix and [the BEDs] . . . effectively controlled and managed the labor relations and human resources for Duramix and the [BEDs]. (Am. Compl. ¶ 101). Pension Fund further alleges that "Duramix and the [BEDs] effectively operated out of a single location at 160 East 22nd Street, Bayone, New Jersey, and at which location all relevant accounting, billing, banking, human resource, and labor relation functions were conducted for Duramix and the [BEDs]." (*Id.* ¶ 102). These new allegations satisfy the Court's previous concern that "[n]o facts in the [original] Complaint suggest that the BEDs and Duramix shared a 'centralized control of labor relations' . . . ." (Sept. 2, 2016 Opinion at 14).[7] The BEDs do not address these new allegations regarding centralized control of labor relations.

---

[6] 711 F.2d 543, 551 (3d Cir. 1983).

[7] In support of their motion to dismiss, the BEDs submitted three exhibits purporting to reflect the differences between Pension Fund's original Complaint and Amended Complaint regarding the three counts at issue. (*See* D.E.

15. Finally, Pension Fund's Amended Complaint sufficiently alleges common ownership and management. Pension Fund alleges that "Duramix and the [BEDs] were operated exclusively by [Defendant] Vincenzo Alessi. He served as the Managing Member of the [BEDs] organized as Limited Liability Companies, as well as the President of those [BEDs] organized as Corporations. The remaining members, shareholders, officers and directors of each BED performed little or no services and contributed little to the management and/or operation of [the BEDs]." (Am. Compl. ¶ 78). Pension Fund also alleges that Alessi Organization Management Company, LLC ("AOM") was the "centralized management company for [the BEDs]." (*Id.* ¶ 97). To that end, Pension Fund alleges that "[t]he billing, bookkeeping, accounts payable, accounts receivable and banking services were all provided to [the BEDs] through AOM." (*Id.* ¶ 92). Similarly, Pension Fund alleges that AOM, "[a]s the management company" for Duramix and the BEDs "was able to maintain absolute financial control over the finances of Duramix and every other [BED], including accounting, record keeping, billing, and banking functions for Duramix and all [the BEDs]." (*Id.* ¶ 99). Accordingly, Pension Fund's Amended Complaint adequately states a claim for single-employer liability. The Court will deny the BEDs' motion as to Count Two.

16. **Count Five: Avoid-and-Evade Liability**. To state a claim for avoid-and-evade liability, a plaintiff must allege that "a contributing employer enter[ed] a transaction with a

---

No. 67-2 ("Guldin Decl."); D.E. No. 67-3 ("Ex. A"); D.E. No. 67-4 ("Ex. B"); D.E. No. 67-5 ("Ex. C")). So, for example, Ex. A is a two-column chart with Pension Fund's allegations regarding single-employer liability, where the left column contains allegations from Pension Fund's original Complaint, the right column contains allegations from Pension Fund's Amended Complaint, and any differences between the two complaints are reflected in bold.

This exercise might have proved helpful to the Court if the exhibits did not omit the new allegations in Pension Fund's Amended Complaint that go directly to the heart of Pension Fund's claims (*see, e.g.*, Am. Compl. ¶¶ 101-102) (alleging centralized control of labor relations in support of single-employer-liability claim). In omitting these new allegations, the BEDs' exhibits mischaracterize the differences between Pension Fund's original Complaint and Amended Complaint. While the Court trusts that the BEDs did not intend to mislead or deceive the Court, it cautions them to refrain from any such practice in the future.

principal purpose of escaping its duty to pay withdrawal liability to the plan or fund." *SUPERVALU, Inc. v. Bd. of Trs. of Sw. Pa. & W. Md. Area Teamsters & Emps. Pension Fund*, 500 F.3d 334, 341 (3d Cir. 2007). The Court previously found that Pension Fund's original Complaint failed to state a claim for avoid-and-evade liability. (Sept. 2, 2016 Opinion at 18) ("Notably, nowhere in the Complaint . . . does [Pension Fund] identify a single 'sham transaction,' nor does [Pension Fund] allege a single specific BED that engaged in manipulation or recalculation of shares or percentages of another BED, nor does [Pension Fund] offer an example of what type of manipulation of shares or sham transactions took place that evince a 'principal purpose' of avoiding or evading the BEDs' alleged duty to pay withdrawal liability."). Pension Fund's Amended Complaint offers hardly anything new. Again, there are no allegations that a specific BED engaged in manipulation or recalculation of shares or percentages of another BED, nor are there examples of manipulation of shares or sham transactions that evince a principal purpose of avoiding or evading liability. Pension Fund's Amended Complaint does not remedy the original Complaint's deficiencies, and therefore Pension Fund fails to state a claim for avoid-and-evade liability.

17. To be sure, the Court will address the two specific transactions that Pension Fund highlights in its opposition brief. The first transaction is an alleged $422,000 loan from Duramix to Durable Recycling, LLC, which is mentioned in only one paragraph of Pension Fund's Amended Complaint. (*See* Pl. Opp. Br. at 19). Paragraph 131 of the Amended Complaint states: "On certain occasions, Duramix provided loans to other [BEDs], including a loan in excess of $422,000.00 to Durable Recycling, LLC." (Am. Compl. ¶ 131). This allegation, by itself, does not raise an inference that Durable Recycling, LLC, or any of the BEDs, entered into a transaction where the principal purpose was to escape withdrawal liability.

18. The second transaction is a $6 million to $8 million settlement payment from Duramix, Defendant Vincenzo Alessi, and the BEDs to Gaetano Alessi, Jr. and Salvatore Alessi. (*See* Pl. Opp. Br. at 20-21). According to the Amended Complaint, this settlement resolved a civil action "commenced by . . . Gaetano Alessi, Jr. and Salvatore Alessi against various other Alessi family members, including Vincenzo Alessi and various constituent business entities comprising the Alessi Family Enterprise, many of which are [BEDs] in the instant matter." (Am. Compl. ¶ 132). Specifically, the Amended Complaint alleges that, "[i]n return for settling the underlying civil action and for selling their shares back to Duramix, Vincenzo Alessi, and the [BEDs] agreed to pay approximately $6,000,000.00-$8,000,000.00 to Gaetano Alessi, Jr. and Salvatore Alessi." (Am. Compl. ¶ 136). Thus, the alleged purpose of this settlement payment, according to Pension Fund's own allegations, was to resolve the underlying civil action and to serve as consideration for the purchase of Duramix shares—not to escape a duty to pay withdrawal liability. And the Amended Complaint includes no other facts about this settlement that could permit the Court to draw an inference that the BEDs entered into the agreement to escape their alleged withdrawal liability. To the extent Pension Fund argues in its opposition brief that the settlement payment could have served a "dual purpose" of providing consideration *and* diverting the BEDs' assets to escape withdrawal liability (*see* Pl. Opp. Br. at 20-21), the Court notes that a "complaint may not be amended by the briefs in opposition to a motion to dismiss," *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). And in any event, the Court finds that Pension Fund's theory—that the BEDs entered into a settlement agreement with the principal purpose of escaping an alleged duty to pay withdrawal liability—falls short of the plausibility standard set forth in *Iqbal* and its progeny. *See* 556 U.S. at 678. Without more, Pension Fund's Amended

Complaint fails to state a claim for avoid-and-evade liability. The Court will therefore grant the BEDs' motion as to Count Five.

19. Accordingly, for the foregoing reasons, the BEDs' motion to dismiss is DENIED as to Counts One and Two and GRANTED as to Count Five. An appropriate order follows.

<u>*s/Esther Salas*</u>
**Esther Salas, U.S.D.J.**